# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DONALD ALAN KERNAN, JR.,

        Plaintiff,

v.

KRISTINE KERIG, LANCE WIERSMA, NIEL THORESON, SHAQUILA SANDLIN, CRAIG POSSELT, JADA MILLER, JAMIE WHITLEY, KERRI OLSEN, LAJERRICA FOSTER, EVITA BROWN, LAPARISH SMITH, ROSS SEITZ, NICOLE WILLIAMS, LILY JACKSON, SHERRY KELBER, CHRISTINE PAVELKO, YVONNE GREEN, and MARCELLA DEPETERS,

        Defendants.

Case No. 24-CV-917-JPS

**ORDER**

      Plaintiff Donald Alan Kernan, Jr., a prisoner proceeding pro se, filed a complaint in the above captioned action along with a motion to proceed without prepaying the full filing fee, or to proceed *in forma pauperis*. ECF Nos. 1, 2. On September 20, 2024, Plaintiff filed a letter regarding additional claims. ECF No. 9. On September 25, 2024, the Court ordered Plaintiff to file an amended complaint including all claims. ECF No. 10. On October 11, 2024, Plaintiff filed an amended complaint. ECF No. 11. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his amended complaint.

1.  **MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On August 16, 2024, the Court ordered Plaintiff to pay an initial partial filing fee of $28.60. ECF No. 7. Plaintiff paid that fee on September 10, 2024. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2.  **SCREENING THE AMENDED COMPLAINT**

    2.1  **Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir.

2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff was incarcerated from 2015 to 2019 for various white-collar crimes. ECF No. 11 at 8. Upon his release in August 2019, Plaintiff was immediately extradited to Illinois to resolve an open case. Plaintiff pled no contest and received two years parole to run concurrently with his extended supervision in Wisconsin. *Id.* Plaintiff spoke with Defendant Jada Miller ("Miller"), a Wisconsin DOC-DCC senior agent, about interstate compact options. *Id.* Plaintiff requested that his Wisconsin case be transferred to Illinois. *Id.* Miller allegedly started the process for an interstate compact. *Id.* Plaintiff completed the Wisconsin forms and sent

$150.00 to Wisconsin DOC. *Id.* Plaintiff continued his check-ins with Illinois DOC. *Id.*

At some point, Miller issued an "unwarranted apprehension request." *Id.* Miller failed to notify Illinois DOC of the warrant. *Id.* Plaintiff was arrested as a result of this warrant and released. *Id.* Instead of calling Plaintiff, Miller issued yet another "apprehension request" less than twenty-four hours after Plaintiff's release. *Id.* Miller then spoke to Plaintiff and lifted the second warrant. *Id.* Miller spoke with Plaintiff's newly assigned agent, and it was discovered that Plaintiff's file was never released to Illinois DOC. Plaintiff resent the paperwork and $150.00 and Miller confirmed receipt. *Id.* at 9.

Miller encouraged Plaintiff to leave Illinois to come to the Wisconsin office. *Id.* Plaintiff spoke with his Illinois agent, Dethrow, who told Plaintiff that he could communicate with Miller from that point on. *Id.* In October 2021, Plaintiff received his discharge paperwork via email and told him that he was "free to go." *Id.* Plaintiff then moved to Alexandria, VA for his job. *Id.* Plaintiff had zero police contact until August 13, 2022 for a misdemeanor domestic violence matter. *Id.* Plaintiff was not arrested, and his name was run with no issues. *Id.* A few days later, a Virginia detective called Plaintiff and told him the police wanted to take his picture. *Id.* Plaintiff retained counsel and discovered that there was an absconding warrant for him in Wisconsin. *Id.* They called Miller and found out that Plaintiff's time was frozen in April 2021; Miller did not submit Plaintiff's information through ICOTS. *Id.*

Plaintiff was placed in custody for the misdemeanor domestic violence issue and the fugitive of justice warrant. *Id.* Defendant Niel Thoreson ("Thoreson"), the regional chief agent, told Plaintiff and his

attorney that they could issue an emergency interstate compact if Plaintiff was in Wisconsin. *Id.* at 10. Plaintiff ultimately signed off on extradition and his attorney told him that he would be in Wisconsin custody for two weeks. *Id.* Plaintiff was transferred to Milwaukee Secure Detention Facility. *Id.* Five days later, Plaintiff was served with revocation paperwork requesting that he serve a prison term of twenty-one months. *Id.* After nine months of delay, Plaintiff received a twelve-month sentence at his final revocation hearing. *Id.* Plaintiff was found guilty of absconding and moving from Illinois without permission from Wisconsin. *Id.* Plaintiff maintains there was no factual basis for the absconding charge. *Id.*

Plaintiff was released in 2023 and forced to live in Milwaukee. *Id.* Plaintiff has started to rebuild his life after losing his job, condo, and time wrongly incarcerated. *Id.* at 11. Plaintiff's case was transferred to multiple agents during this time period. *Id.* On February 28, 2024, Defendant Lajerrica Foster ("Foster") confirmed that she was his newly assigned agent. *Id.* During this visit, Plaintiff was placed in custody again. *Id.* Defendant Lily Jackson ("Jackson") claimed that Plaintiff defrauded her. *Id.* Plaintiff had invoice statements, emails, text messages, and a video to disprove the allegations. *Id.* Plaintiff tried to release his property to his father but his phone disappeared. *Id.* Plaintiff was served with revocation paperwork on March 11, 2024. *Id.* at 12. A revocation hearing was held on April 24, 2024. *Id.* Plaintiff's case was continued until June 25, 2024. During this hearing, the administrative law judge ended the hearing in the middle of cross examination to try to save Defendant Kerri Olsen, senior agent, from perjuring herself. *Id.* Plaintiff was revoked on August 29, 2024. *Id.* Plaintiff maintains that his rights were violated in his revocation hearings. *Id.* at 17.

**2.3	Analysis**

The Court finds that Plaintiff's amended complaint fails to comply with Federal Rules of Civil Procedure 18 and 20. While multiple claims against a single party are fine, a plaintiff cannot bring unrelated claims against different defendants in the same case. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); *George*, 507 F.3d at 607; *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants in one case "is limited to claims arising from the same transaction or series of related transactions").

Here, Plaintiff brings claims related to two separate revocation proceedings. Plaintiff names eighteen defendants, many of which appear to have no involvement in both proceedings. As such, the Court finds that Plaintiff's amended complaint violates Rules 18 and 20 because he seeks to bring unrelated claims against unrelated defendants. When a plaintiff has improperly joined unrelated claims against unrelated defendants, the court must reject the complaint "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21). Rather than the Court deciding which claims to sever (remove from the case) or which defendants to dismiss, the Court will instead give Plaintiff an opportunity to choose which of the above-described unrelated claims he wants to pursue in this case, and which he wants to bring in separate cases. The Court will give the plaintiff a deadline by which to file an amended

complaint that focuses on the related claim(s) of his choice. If he wishes to pursue the other unrelated claims, he may file separate complaints regarding those claims. If Plaintiff fails to file an amended complaint by the deadline, the Court will choose which claim(s) to allow Plaintiff to pursue and will dismiss any improperly joined claims/defendants. In amending his complaint, Plaintiff should consider the following information as many of his claims related to his revocation proceedings are likely barred.

Defendants are likely absolutely immune from suit for their involvement in initiating revocation proceedings and revoking his supervised release. Courts apply a "functional approach" to decide whether the actions of a government official warrant absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (internal citation omitted); *Jones v. Cummings*, 998 F.3d 782, 787–88 (7th Cir. 2021). Absolute immunity shields, for example, a prosecutor's conduct as an advocate that is "intimately associated with the judicial phase of the criminal process," such as initiating a prosecution and presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). But absolute immunity does not extend to a parole officer who investigates a charge and then prepares a violation report for a revocation; such conduct lacks a "prosecutorial or judicial analog." *Wilson v. Kelkhoff*, 86 F.3d 1438, 1446 (7th Cir. 1996); *see also Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005) (declining to extend absolute immunity to parole officers for performing their day-to-day duties in the supervision of a parolee).

The Seventh Circuit has found that "[w]ith regard to [a parole agent's] actions to initiate revocation proceeding, she is entitled to absolute immunity. *Mays v. Johnson*, 850 F. App'x 981, 982 (7th Cir. 2021) (citing

Page 7 of 11
Case 2:24-cv-00917-JPS   Filed 12/12/24   Page 7 of 11   Document 14

*Tobey v. Chibucos*, 890 F.3d 634, 650 (7th Cir. 2018) (probation officer engaged in quasi-judicial function by filing memoranda requesting that state's attorney begin proceedings to revoke probation)). Specifically, with respect to Wisconsin regulations, the court noted that "parole agents have the discretion to decide how they will proceed after investigating an alleged parole violation." *Id.* Plaintiff should consider this information in determining which Defendants to include in his amended complaint.

Additionally, Plaintiff's claims may be barred by *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). As noted above, Plaintiff filed his complaint under 42 U.S.C. § 1983. However, a petition for a writ of habeas corpus under 28 U.S.C. § 2254 "is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release." *Id.* at 481. As explained in *Heck,* a plaintiff is precluded from bringing claims for damages if a judgment in favor of the plaintiff would "necessarily imply the invalidity of his [state criminal] conviction or sentence." *Id.* This bar applies unless the underlying conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87. This same bar applies unless a plaintiff's state court revocation proceeding has already been overturned. *See Knowlin v. Thompson*, 207 F.3d 907, 909 (7th Cir. 2000) (recovery in a federal challenge "would necessarily imply the invalidity of [plaintiff's] Wisconsin parole revocation, which *Heck* instructs cannot be shown through a § 1983 suit."). Here, Plaintiff alleges constitutional violations against Defendants that led to his previous and current incarceration. Since nothing in Plaintiff's pleadings or the publicly available information suggests his convictions have been invalidated or

called into question, his challenges to these proceedings are likely *Heck*-barred.

Plaintiff may amend his complaint on or before **January 2, 2025**. When writing his amended complaint, Plaintiff should provide the Court with enough facts to answer the following questions: (1) Who violated his constitutional rights?; (2) What did each person do to violate his rights?; (3) Where did each person violate his rights?; and (4) When did each person violate his rights? Plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the Court and each Defendant with notice of what each Defendant allegedly did or did not do to violate his rights.

The Court is enclosing a copy of its amended complaint form and instructions. Plaintiff must list all of the defendants in the caption of his amended complaint. He should use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If the space is not enough, Plaintiff may use up to five additional sheets of paper.

Plaintiff is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaints and must be complete in itself without reference to the prior complaints. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If an amended complaint

is received, it will become the operative complaint in this action, and the Court will screen it in accordance with 28 U.S.C. § 1915A.

3. **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the amended complaint, ECF No. 11, violates Federal Rules of Civil Procedure 18 and 20; Plaintiff may submit an amended complaint on or before **January 2, 2025**;

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank prisoner amended complaint form and a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $321.40 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution; and

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined.

Dated at Milwaukee, Wisconsin, this 12th day of December, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge